444 P.2d 450

Lee BRATTON, dba Lee Bratton Painting and Decorating, Petitioner,

v.

INDUSTRIAL COMMISSION of Arizona and Frank G. Murphy, John Ahearn, Bruce Thoeny, as members of said Commission, Defendant Insurance Carrier and James Leather, Applicant, Respondents.

No. I CA–IC 183.

Court of Appeals of Arizona.

Aug. 27, 1968.

Rehearing Denied Oct. 2, 1968.

Review Denied Nov. 12, 1968.

W. H. Chester, Phoenix, for petitioner.

Robert D. Steckner, Chief Counsel by, Michael A. Lasher, Jr., Phoenix, for respondent, Industrial Commission.

Hughes, Hughes & Conlan, by, John C. Hughes, Phoenix, for respondent James Leather.

STEVENS, Judge.

The two questions which are presented in connection with the review of the Award of The Industrial Commission are:

Whether the Respondent Leather was an employee of the petitioner Bratton; and

Whether Bratton had three or more employees so as to bring him within the mandatory provisions of the Workmen's Compensation Act.

■ The Industrial Commission resolved both of these questions adversely to Bratton. We recognize that the Industrial Commission's Award must be sustained if it is reasonably supported by the evidence. We recognize that the facts must be liberally construed in favor of upholding Workmen's Compensation coverage. The basic statutes which are involved in this matter are as follows:

"§ 23–807

"A. Any contract, rule, regulation or device whatever, the purpose or intent of which is to enable an employer to exempt himself from any liability created by this article, is to that extent void."

"23–902. Employers subject to chapter

"A. Employers subject to the provisions of this chapter are * * * every person who has in his employ three or more workmen or operatives regularly employed in the same business or establishment under contract of hire. * * * For the purposes of this section 'regularly employed' includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer.

"B. When an employer procures work to be done for him by a contractor over whose work he retains supervision or control, and such work is a part or process in the trade or business of the employer, then such contractors and the persons employed by him, and his sub-contractor and persons employed by the sub-contractor, are, within the meaning of this section, employees of the original employer.

"C. A person engaged in work for another, and who while so engaged is independent of the employer in the execution of the work and not subject to the rule or control of the person for whom the work is done, but is "engaged only in the performance of a definite job or piece of work. and is subordinate to the employer only in effecting a result in accordance with the employer's design, is an independent contractor, and an employer within the meaning of this section."

Prior to 1965 Bratton and Leather were mutual acquaintances. Prior to the time Bratton acquired an Arizona Contractor's License his name was on the FHA approved bid list and he was the successful bidder in the reconditioning of a number of

dwellings which the FHA was repairing for resale. At that time no contractors license was required to perform this work.

■ Bratton's office was in his home. If a prospective job required cabinet work this phase of the job was performed on a fixed fee for labor and materials, often by Maddox. Maddox and Bratton would often inspect a prospective job together. Maddox would give Bratton his, Maddox's, estimate which Bratton then used in preparing his bid. If there was drywall work to be done, similar arrangements were made, often with Ray Peacock. Like arrangements were made for other specialty work such as glass replacement, electrical work or plumbing. Bratton personally performed most of the non-specialized reconditioning himself. His bookkeeping was performed by a bookkeeping service on a monthly contract. Even the clean-up work was contracted. When the job was finished, FHA would inspect the premises. If corrective work was required the individual who performed that work made the corrections without extra compensation. When the job was completed Bratton presented his claim to FHA in the amount of his bid. Usually five to six weeks elapsed before the FHA check in payment would be received at which time Bratton would deposit the same to his personal account.

Bratton maintained a separate folder for each job placing in the folder all claims for material and work relating to that job. When the check was received and deposited, he would pull the folder for the job in question paying the various bills and personnel who had rendered service in connection with that particular contract.

Leather was a skilled painter, a man who worked without supervision and who was fully capable of performing a highly satisfactory job. In January 1965 Leather "had been out of work for quite awhile" and he called Bratton seeking employment. No arrangement was made until early February 1965. The testimony of both men is substantially the same with reference to the arrangement between them. Leather's testimony is quoted as follows:

"A. Well, he asked me, he explained to me that he was doing F.H.A. work, as he called them retracts, and he said he wanted a man to do the painting, he couldn't affort to pay wages right now, because his money was tied up in this F.H.A. project, and had a proposition where if I was to work for him, I would have to wait for six weeks or five, maybe six weeks before I would receive my pay. On the same basis, he said he would take 10% off the profits and split the remainder 50–50. I asked him questions of about what chance have I of losing; he said, "You can't lose, because it will pay better than wages." On that basis, I took the job.

\* \* \* \* \* \*

"Q. So on these various jobs, you and he made the same amount of money, is that correct?

"A. Yes.

\* \* \* \* \* \*

"Q. Did you ever assist him in preparing some of these or giving him figures?

"A. Oh, we looked the job over and he would ask me my figure, what I think the job was worth.

"Q. Would you give him an opinion?

"A. I would give him an opinion, I wouldn't make a bid on it."

With reference to the 10%, Bratton testified that this was for the purpose of covering such overhead expenses as gasoline, bookkeeping and insurance.

Bratton had an old truck which Leather used. Bratton had an established line of credit with several material suppliers and Leather charged materials to Bratton's account, the charge slips being placed in the particular job folder. While both men furnished some of the equipment which Leather used in his work, Bratton probably furnished the greater share of that equipment.

There was no permanent arrangement between the two men. Profits were divided

on jobs which were not FHA jobs. Profits were divided on jobs wherein Leather did all of the work or Bratton did all of the work, or both men participated in performing the contract. We again quote Leather:

"Q. Did you and Lee work together on these jobs?

"A. The majority of them, sometimes it was all just painting, so I would do all the painting myself.

"Q. He generally wasn't around when you were just painting?

"A. No.

"Q. What was he doing at that time?

"A. Well, he was doing these other jobs, I don't know where, not being on them."

To assist Leather in his work Roger Peacock was hired to prepare the surfaces for painting. Leather instructed him in the art of painting and Peacock's wages were increased. Peacock's wages were paid by Bratton and were calculated for each job, being deducted before the division of the profits for that job. For the purposes of this opinion we consider Roger Peacock an employee of Bratton.

On 20 August 1965, Leather was working on one of the contracts secured pursuant to this arrangement at which time he fell and was seriously injured. He presented a claim to the Industrial Commission. Bratton did not have Industrial Commission coverage. After hearings the Industrial Commission resolved the issues against Bratton.

Bratton was not in the position described by the Arizona Supreme Court in the case of Marshall v. Industrial Commission, 62 Ariz. 230, 156 P.2d 729 (1945). There was no evidence that prior to the association of Bratton and Leather in February 1965 that Bratton had any employees, certainly no evidence that he had three employees.

We have carefully reviewed the case law in Arizona and we find no similar fact situation. We see no useful purpose in discussing at length the case law tests, the distinctions resolving the question between the employee on the one hand and the independent contractor on the other.

Under the evidence Leather was not an employee. There was a general gentlemen's agreement between the two men which applied to each job and either could terminate as each job was completed. After Leather's injury, Bratton completed the job on which Leather was working at the time of the injury and Leather was paid his 50% of the profits of that job.

Prior to the injury, at Leather's suggestion, Bratton attempted to have Leather's name placed on the approved FHA list so that Leather could bid painting jobs in his own right. Bratton's efforts in this connection were not successful.

■ The fact that Bratton secured Workmen's Compensation coverage after the Leather claim was made in order to avoid possible future problems of a similar nature is not evidence of an employer-employee relationship on the date of the injury.

■ Even should Leather, by some stretch of the imagination, be classified as an employee at the time of his injury, the evidence does not sustain the finding that Bratton had three or more employees regularly employed in his business.

We regret that Leather was seriously injured. The fact of serious injury does not create an obligation on the part of Bratton under the Workmen's Compensation Law.

The Award is Set Aside.

CAMERON, C. J., and J. THOMAS BROOKS, Judge of the Superior Court, concur.

NOTE: Judge FRANCIS J. DONOFRIO having requested that he be relieved from the consideration of this matter, Judge J. THOMAS BROOKS of the Superior Court was called to sit in his stead and participate in this decision.