[Civil No. 4769. Filed March 6, 1945.]

[156 Pac. (2d) 729.]

N. H. MARSHALL; or N. H. MARSHALL and A. MARTINEZ, a Co-partnership d. b. a., HAROLD BEVERAGE COMPANY, Petitioners, v. THE INDUSTRIAL COMMISSION OF ARIZONA, and EDITH MAE ROBINSON, Repondents.

Mr. George D. Locke, and Mr. J. B. Sumter, for Petitioners.

Mr. H. S. McCluskey, and Mr. David P. Jones, for Respondents.

LaPRADE, J.—This matter is before us on a writ of *certiorari* from an award of the Industrial Commission granting death benefits to Edith Mae Robinson as the surviving widow and sole dependent of Arnold Scott Robinson, deceased. Mr. Robinson sustained an injury by accident on June 1, 1943, arising out of and in the course of his employment by the petitioner herein which resulted in his death a few hours after the accident. After a claim was filed, the deceased's employer filed its report with the commission denying liability upon the ground that on the day and at the

time of the accident it had only one workman regularly employed in its business at Parker, Arizona.

It appears from the findings of fact and award of the commission, and not disputed by the petitioner that during the months July to November 1942, both inclusive, the petitioner continuously had in its employ three or more workmen regularly employed in the operation of its bottling works at Parker; that during the month of December 1942 petitioner's source of sugar supply was cut off by an order of the Office of Price Administration (O. P. A.), and by reason thereof the manufacturing plants were temporarily suspended pending adjustment of the difficulty; that during the months of December 1942 to May 1943, both inclusive, petitioner continued in the business of purchasing and distributing beverages (soft drinks) manufactured in California and delivered by it in Arizona; that during said last-named period of time it did not have in its employ three or more men, but during said period it had in its employ one or two men at Parker, Arizona; that shortly after June 1, 1943, it resumed normal operations and at all times subsequent to the 12th day of June 1943, it had in its employ three or more employees; and, that at no time had it complied with the provisions of the Arizona Workmen's Compensation Law relative to securing insurance for its employees. Within the time provided by law, petitioner filed an application for a rehearing, predicated upon the proposition that, inasmuch as the commission had found as a fact that on the day and at the time of the accident and for approximately six months prior thereto petitioner had in its employ only one or two men, it lacked jurisdiction to make an award of compensation under Section 56–947, Arizona Code Annotated 1939. This petition was denied. Hence this review.

Petitioner contends that in all cases arising under Section 56–947, Arizona Code Annotated 1939, the

number of employees on the day and at the time of the accident is a jurisdictional fact which must be determined by the commission; and, that whenever it conclusively appears that on the day and at the time of an accident an employer had in his employ less than three workmen regularly engaged in the same business, or in or about the same establishment, the commission must, as a matter of law, dismiss the application for compensation for want of jurisdiction.

The sole issues here presented are:

1. Was the petitioner herein an employer as defined by Sections 56–928 and 56–947, Arizona Code Annotated 1939?

2. Did the Industrial Commission of Arizona have jurisdiction to make the award in question?

The petitioner in support of its contention relies primarily upon four sections of the statute; e. g., 56–928, 56–929, 56–932 and 56–947, Arizona Code Annotated 1939, which in so far as pertinent read as follows:

"56–928. *Employers included — Independent contractor.*—The following employers shall be subject to the provisions of this article: The state, and each county, city, town, municipal corporation and school district therein *and every person who has in his service three (3) or more workmen or operatives regularly employed in the same business, or establishment,* under a contract of hire, except agricultural workers not employed in the use of machinery, and domestic servants; employers of such agricultural workers and domestic servants may, however, at their election come under the terms hereof by complying with its provisions and the rules and regulations of the commission.

"*The term 'regularly employed,' as herein used, includes all employments, whether continuous throughout the year or for only a portion of the year, in the usual trade, business, profession, or occupation of an employer. . . .*"

"56–929. *Employee, workman, and operative.*—The terms 'employee,' 'workman,' and 'operative,' as used

herein, mean: . . . Every person in the service of any employer subject to this article as defined in the preceding section including aliens and minors legally or illegally permitted to work for hire, but not including a person whose employment is casual and is not in the usual course of trade, business or occupation of the employer. . . . "

"56–932. *Securing compensation—Alternative methods—Regulations* . . . " (Text omitted for brevity.)

"56–947. *Liability of employer failing to comply.* . . . " (Text omitted for brevity.)

These provisions of the Arizona law, of course, are controlling, and the jurisdiction of the Commission must be found within them.

Petitioner by its argument seeks to interpolate the italicized words into Section 56–928 to make it read as follows:

"The following employers shall be subject to . . . this article: . . . every person who has in his service three (3) or more workmen or operatives *continuously and* regularly employed *on the day that an employee sustained an accidental injury, or death,* in the same business, or establishment, under a contract of hire, except agricultural workers not employed in the use of machinery, and domestic servants; employers of such agricultural workers and domestic servants *and no others* may, however, at their election come under the terms hereof by complying with its provisions and the rules and regulations of the commission."

Petitioner completely overlooks the provisions of the second paragraph of Section 56–928, which in part reads as follows:

"The term *'regularly employed' as herein used, includes all employments, whether continuous throughout the year or for only a portion of the year, in the usual trade, business, profession or occupation of an employer* . . . ."

 It will therefore be noted that the legislature has not defined the term "regularly employed" as it

is defined in dictionaries or in the acts of some other states. The legislature has provided the yardstick and the definition by which to measure employment under the provisions of this statute. The legislative definition is controlling. *Palle* v. *Ind. Comm. of Utah,* 79 Utah 47, 7 Pac. (2d) 284, 81 A. L. R. 1222. This court in construing the statute in the light of the definition of the legislature will, of course, give it a common-sense interpretation. *Mountain States Tel. Co.* v. *Mitchell,* 61 Ariz. 436, 150 Pac. (2d) 355.

█ The question before us is whether the legislature used the word ''regularly'' in its strict sense or with its other, not uncommon though inexact, significance. If the literal meaning of the word is adopted, difficulties in the practical operation of the law are at once apparent. A great many persons who continuously employ three or more, occasionally employ less. If employers by the adventitious fact that temporarily they employ less than three are thereby taken without the act, an inconstant and fluctuating test of the application of the law is established. The employer is likely to be caught unawares, and the right of the employee to compensation will be governed not by any customary or regular practice of his employer, but by the chance methods of the occasion. The legislature could hardly have intended such a result. That the legislature did not intend such a result is patent in view of the definition it gave to the term ''regularly employed.''

██ The court, as the commission has done, will take judicial knowledge of the established mode or plan in the operation of many of the businesses and employments of this state, and, in the absence of compelling language in the statute, will not adopt a rule which would defeat the public policy of the state as defined in the compensation law, and render nugatory the purpose for which it was enacted. The court, like the commission, must view our industrial and economic enterprises realistically in order

that both the employer and the employee, with some degree of security, may know whether the compensation act is applicable or not. Business cannot operate nor workmen feel secure on an "off again, on again, Finnegan" basis. Workmen cannot be expected to inquire every morning whether they are insured or on their own, or the employer find himself subject to a damage suit if one of his workmen fails to report.

This court knows the periodic and intermittent nature of many of the employments in Arizona. To illustrate, a building contractor, whether he be a carpenter, painter, plumber, or other artisan, in the performance of a contract, may have a dozen or a hundred men employed for a month or more, and when the job is completed there may be weeks when he may have no one employed but a bookkeeper, and this may occur several times a year. A road contractor may have a score of men employed as truck drivers for a month. When the job is finished, he may lease his trucks and have no one but possibly a bookkeeper employed for weeks or months at a time, until he secures a new contract. Another illustration is a garage. During the week, the garage may have a half-dozen employees; Saturday afternoons and Sundays, merely one or two.

The soft drink business itself is a good example. During the summer months, an employer may have a large number of employees, and during the winter have comparatively few. Cases might be multiplied *ad infinitum*. The Alabama court in *Mobile Liners, Inc.* v. *McConnell*, 220 Ala. 562, 126 So. 626, took judicial notice of such matters.

In the case at bar, the employee in question was injured during the usual course of the employer's business. He had been employed when the employer had three or more employees regularly employed in the same business. But for his death, he would still have been employed when the employer again had three or

more employees regularly employed in the same business.

■ The following cases are to the effect that where in the ordinary conduct of an employer's business he customarily or regularly employs the number required to make the act applicable to him, but when the accident occurred he was not employing that many, he is within the provisions of the Act. *Mobile Liners, Inc.* v. *Mc-Connell,* 220 Ala. 562, 126 So. 626; *Employers' Liability Assurance Corporation et al.* v. *Hunter,* 184 Ga. 196, 190 S. E. 598; *Cauchon* v. *Gladstone,* 104 Vt. 357, 160 Atl. 254.

We have carefully examined all the cases submitted by petitioner; to-wit, *S. H. Kress & Co.* v. *Ind. Comm.,* 38 Ariz. 330, 299 Pac. 1034; *Hight* v. *Ind. Comm.,* 44 Ariz. 129, 34 Pac. (2d) 404; *Melendez* v. *Johns et al.,* 51 Ariz. 331, 76 Pac. (2d) 1163; *Hardman* v. *Ind. Comm. of Utah,* 60 Utah 203, 207 Pac. 460; *Holt* v. *Ind. Comm., of Utah,* 96 Utah 484, 87 Pac. (2d) 686; and *Palle* v. *Ind. Comm. of Utah,* 79 Utah 47, 7 Pac. (2d) 284, 81 A. L. R. 1222, and think that they are all readily distinguishable from the facts in the instant case. The petitioner suggests that in the case of *Hight* v. *Ind. Comm.,* 44 Ariz. 129, 34 Pac. (2d) 404, this court, in construing Section 56–928, *supra,* used language which implies that jurisdiction to make an award under Section 56–947, *supra,* depends upon the number of workmen or operatives regularly employed in the same business at the time and on the day of the accident. We admit such implication arises, but we did not hold therein that an employer having once subjected himself to the provisions of the statute by conducting a business wherein he had three or more workmen regularly employed was not under the act when, on the day of an accident, less than three workmen were on the job. The questions submitted for determination in the two Utah cases, Palle v. Ind. Comm. of Utah and Holt v.

Ind. Comm. of Utah, *supra,* concerned the hiring of casual employees in the regular course of the employer's business. The holding in these cases is to the effect that the commission and employer must count the total number of employees on the day and at the time of an accident where the employer does not have three or more workmen regularly employed but on the day of an accident has regular and casual employees numbering three or more, all occupied in the prosecution of his usual business.

In the instant case, we are not concerned with the effect of supplementing the regular employees with casual employees. The determination of this case on its facts is to be found in the application of the rules set out in Section 56–928, *supra.* On the facts here, there is no occasion to consider the application of Section 56–929, *supra,* relating to casual employments.

■ We are of the opinion that the petitioner at the date of the injury was an employer as defined by Sections 56–928 and 56–947, *supra,* and subject to said provisions. This conclusion answers petitioner's contention that the commission was without authority to accept its application, had it made one, for insurance during the period when it was partially shut down and actually employed only one or two employees. It could and should have secured insurance, both at the times it had three or more employees, and at the times when it was temporarily suspended and temporarily employing only one or two employees. *Employers' Liability Assurance Corp., Ltd.,* v. *Frost,* 48 Ariz. 402, at page 414, 62 Pac. (2d) 320, 107 A. L. R. 1413.

It was the finding of the commission that the manufacturing plants of petitioner "were temporarily suspended pending the adjustment of its difficulties with the O. P. A." The further finding that the suspension continued for six months in no way takes away from or nullifies the finding that the suspension was tempo-

rary—it merely fixed the duration of the suspension found to be "temporary." For all that appears, the petitioner did not know for how long it would be restrained. It affirmatively appears that it remained in business as a going concern, poised to resume when it got the green light. Its conduct in this respect was no different than it would have been had it been compelled to drop to one or two employees pending repairs that might have been occasioned by failure in its machinery.

The award is affirmed.

STANFORD, C. J., and MORGAN, J., concur.