498 P.2d 556

**MODERN TRAILER SALES OF ARIZONA, INC., a corporation, Petitioner,**

v.

**The INDUSTRIAL COMMISSION of Arizona, Respondent,**

**Ronnie R. Van Buskirk, Respondent Employee.**

**No. I CA–IC 675.**

Court of Appeals of Arizona, Division 1, Department A.

July 6, 1972.

Rehearing Denied Sept. 19, 1972.

Review Denied Oct. 24, 1972.

Chris T. Johnson, Phoenix, for petitioner.

William C. Wahl, Jr., Chief Counsel, Industrial Commission of Ariz., Phoenix, for respondent.

William B. Revis, Phoenix, for respondent employee.

STEVENS, Presiding Judge.

In this matter the employer did not carry workmen's compensation insurance at the time the employee sustained work-related accidental injuries. The employer urges that it did not then have in its employ three or more workmen regularly employed and

that The Industrial Commission of Arizona was without jurisdiction to adjudicate the claim of the employee.

We are called upon to determine whether the Commission had jurisdiction and to determine whether the absence of medical witnesses at the hearing precluded an award of compensation.

Modern Trailer Sales of Arizona, Inc., at all times material to this opinion has been a duly organized Arizona corporation. The articles of incorporation were filed on 6 March 1969. It will be referred to herein as the employer or as the corporation. The business of the corporation was the buying and selling of house trailers and for that purpose the corporation established a business location and a lot on which trailers were displayed. Harold Welton was at all times the lot manager and a full-time employee of the corporation. Welton hired all of the help of the corporation; he kept the time cards for those who rendered services to the corporation and for all intents and purposes was the corporation's Arizona executive. The incorporators were residents of Colorado, one of whom made periodic trips to Arizona. In addition to Welton, the corporation had one full-time employee who was paid a salary. There were several successive employees in this catgory, who worked full time. They set up trailers, moved them, repaired them, and performed other duties mostly mechanical in nature. Welton described these duties as being the duties of a service man.

Ronnie R. Van Buskirk, herein referred to as the claimant, became employed by the corporation as the full-time service man in May 1969 and remained as a full-time service man to and including Saturday, 11 October 1969. He was paid a salary for his services. The industrial claim now in question arises out of an accident which occurred on Thursday, 9 October. Welton and the claimant were the only paid employees rendering service to the corporation on that day.

John Selivonik worked for the corporation as a service man at an hourly wage when there was need for his services. His employment under this arrangement commenced in mid-September 1969 and continued beyond the date of the injury here in question. During the week of the injury he worked for the corporation only on Friday and Saturday, the 10th and the 11th.

From time to time the corporation would employ women at an hourly wage to clean the trailers. Welton's testimony included the following:

"Q. From, say, March 1969 through October 1969 did you ever have more than two full-time employees?

"A. No.

"Q. Percentage-wise approximately—if you can give me an estimate—how much of the time from March 1969, say, when the corporation was incorporated, through October 9, 1969, did you have a third person who actually did some work?

"A. Percentage of the time?

"Q. Right.

"A. I would say twenty-five percent or less. Could I add something? The only time I would get somebody to help is when we got new mobile homes in or vice versa; or maybe some weeds cut on the lot or something like that.

"Q. Or some trailers cleaned?

"A. Some trailers cleaned, yes."

Welton did not consider anyone to be an employee of the corporation unless that person was a full-time employee, that is to say, unless that person worked 8 hours a day and 6 days a week. By that definition Welton considered that on the day of the injury he and the claimant were the only employees of the corporation.

We turn to our statutes. A.R.S. § 23–901 is a definitions section and provides in part:

"In this chapter, unless the context otherwise requires:

&ast; &ast; &ast; &ast; &ast; &ast;

"4. 'Employee', 'workmen' and 'operative' means:

&ast; &ast; &ast; &ast; &ast; &ast;

"(b) Every person in the service of any employer subject to the provisions of this chapter, * * * but *not* including a person whose employment is casual *and not* in the usual course of trade, business or occupation of the employer." (Emphasis added).

A.R.S. § 23–902 enumerates the employers who are subject to the law and we quote subsection (A) thereof in part:

"A. Employers subject to the provisions of this chapter are * * * every person who has in his employ three or more workmen or operatives regularly employed in the same business or establishment under contract of hire, except agricultural workers not employed in the use of machinery and domestic servants. * * * For the purposes of this section 'regularly employed' includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer."

The hearing officer found that Selivonik was not a casual employee but was a regular employee, and having so found, expressed the opinion that it was not necessary to determine whether the women who did the cleaning were regular or casual employees. The hearing officer determined that the corporation came within the compulsory insurance requirements of "three or more workmen * * * regularly employed * * *", A.R.S. § 23–902, subsec. A, and then proceeded to make an award in favor of the claimant. On review the Commission affirmed the hearing officer by a vote of three to two, an award of the Commission followed and thereafter the matter was brought before this Court by a timely petition.

Among the Arizona cases which we have reviewed are Hight v. Industrial Commission, 44 Ariz. 129, 34 P.2d 404 (1934); Marshall v. Industrial Commission, 62 Ariz. 230, 156 P.2d 729 (1945); Cooper v. Industrial Commission, 74 Ariz. 351, 249 P. 2d 142 (1952); Scott v. Rhyan, 78 Ariz. 80, 275 P.2d 891 (1954); Sherrill & La

Follette v. Herring, 78 Ariz. 332, 279 P.2d 907 (1955).

■ The Hight case appears to stand for the proposition that it is the number of employees furnishing services as of the day of the injury which controls. In our opinion the Marshall case and the Sherrill & La Follette case limit that concept to agricultural workers. It is our opinion that in industry in general the test of whether there are three or more workmen regularly employed is not limited to the day of the industrial accident. Marshall makes this quite clear.

In the Cooper case the workman was doing carpentry and alterations in the private home of his employer. The Court stated:

"These alterations being made on the Van Wagenen residence were certainly only casual or incidental to the home life of Mr. Van Wegenen." 74 Ariz. at 355, 249 P.2d at 144.

The use of the word "casual" in the above context is not helpful in solving our problem.

While in the Scott case the injured man's relation to the employer was somewhat different from the relationship between the corporation on the one hand and Selivonik and the cleaning women on the other, we find the following statement of the court to be significant: "Moreover, the duties performed by Miller are not distinct from the business of petitioners." 78 Ariz. at 83, 275 P.2d at 893. Selivonik and the cleaning women were employed "in the usual course of trade, business or occupation of the employer", A.R.S. § 23–901, subsec. 4, par. b, or "in the usual trade, business, profession or occupation of an employer", A.R.S. § 23–902, subsec. A. These persons were "regularly employed", not at fixed and definite intervals, but when the business needs of the corporation so required and up to 25% of the time. Even though this type of employment could arguably be called "casual employment", we place great significance upon the last portion of A.R.S. § 23–901, subsec. 4, par. b.

■ Simply stated, we are convinced that casual employment which is in the "usual course of trade, business or occupation of the employer" is that type of employment which would include a person within the definition of an employee, workmen or operative as defined by A.R.S. § 23–901, subsec. 4, par. b. This rationale assumes, of course, that the person being considered is in the employ of an employer who is subject to the provisions of the chapter.

■ In other words, our interpretation of the exception in A.R.S. § 23–901, subsec. 4, par. b is that it excludes a "casual" employee only when that person is *not* employed in the usual course of trade, business or occupation of the employer. Both of these requirements must be met before a person will be excluded from the terms "employee, workmen or operative." It is our opinion that where there is a scheme or plan or periodic need for extra short-term employees in the usual course of the business of the employer, then such extra short-term employees are to be counted in determining the presence of three or more employees regularly employed thus necessitating the securing of workmen's compensation insurance. The words "or for only a portion of a year" do not exclude short-term employment. Our opinion is the same even though the women who do the cleaning are employed by the corporation from employment agencies and are not necessarily the same person each time.

■ We hold that the corporation's scheme of employment required that it carry workmen's compensation coverage.

■ Prior to the hearing medical reports were placed in the file which established the claimant's disability and the claimant's testimony established the causal relationship. The corporation had secured an examination of the claimant by Thomas H. Taber, M.D. The claimant was treated by Harold E. Donovan, D.O., and by John W. White, D.O. Reports from Doctors Donovan and White were placed in The Industrial Commission file. The corporation prior to the hearing requested that the three doctors be subpoenaed. At the hearing the corporation waived the right to examine the doctors. The claimant did not call any of the treating physicians to testify at the hearing. The hearing officer's award recites that he considered the medical reports in arriving at his conclusions. In our opinion the reports and the evidence sustain the award.

Prior to the hearing the corporation took the deposition of the claimant. During the deposition the claimant denied any prior back injury and denied having previously worn a back brace, whereas his testimony at the hearing included an admission of a back injury and the wearing of a back brace some five or four years prior to the accident in question. The question of the adequacy of the impeachment of the claimant's testimony and the weight to be given to the claimant's testimony was resolved in favor of the claimant at the hearing.

Complaint is also made as to the computation of the average monthly wage contained in the award. We find no error in that regard.

The award is affirmed.

CASE and DONOFRIO, JJ., concur.