871 P.2d 720

**John DONAHUE, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**William O'Brien, dba CNG Construction, Respondent Employer,**

**SPECIAL FUND DIVISION/NO INSURANCE SECTION, Respondent Party In Interest.**

**No. 1 CA–IC 92–0044.**

Court of Appeals of Arizona, Division 1, Department A.

Sept. 16, 1993.

Review Denied May 3, 1994.

Delaney & Melkonoff by Edgar M. Delaney, Phoenix, for petitioner.

Anita R. Valainis, Chief Counsel, Indust. Com'n of Arizona, Phoenix, for respondent.

Diane L. Silver, Phoenix, for respondent employer.

Maria Morlacci, Phoenix, for respondent party in interest.

## OPINION

LANKFORD, Presiding Judge.

The issue presented in this review of an Industrial Commission decision is whether an employer is subject to the Workers' Compensation Act when, although it is unusual for him to employ any workers, he hires a temporary employee for a task in the employer's usual trade. Coverage in this situation is governed by Ariz.Rev.Stat.Ann. ("A.R.S.") section 23-902(A), which provides in part:

Employers subject to the provisions of this chapter are ... every person who has in his employ any workmen or operatives *regularly employed* in the same business or establishment under contract of hire.... For the purposes of this section *"regularly employed"* includes *all employments,* whether continuous throughout the year, or for only a portion of the year, *in the usual trade, business, profession or occupation of an employer.*

(Emphasis added).

The dispute before us focuses on whether "all employments ... in the usual trade, business, profession or occupation" includes all hiring for tasks ordinary to the employer's trade or business, or encompasses only employments when it is usual in the employer's trade or business to hire workers.

The Administrative Law Judge ("A.L.J.") denied compensability on review, finding that the employer was not subject to the Act because he did not regularly employ any workers. Because we agree that section 23–902(A) applies only to those employers who hire others in the usual course of their trade, business, profession or occupation, we affirm.

This claim arose after claimant Donahue fell from a ladder on April 6, 1991 while working as a day laborer for William O'Brien, a licensed general contractor. O'Brien had agreed to build two ramadas at the school where his wife worked. He needed a carpenter to help, and a mutual acquaintance recommended Donahue, who had never worked for O'Brien. O'Brien offered Donahue a "couple" of days work for $50.00 per day and Donahue accepted. On the third day of work, when the ramadas were nearly finished, Donahue fell from a ladder. He timely filed a workers' compensation claim for his injuries. Because O'Brien was uninsured, the commission processed the claim. *See generally* A.R.S. § 23–907(B). The commission accepted the claim for compensability and O'Brien timely protested.

At the ensuing hearing, O'Brien testified about his hiring practices. He stated that he was a handyman working as a sole proprietor from 1986 through June 1991, when he terminated his business as unprofitable. Although he occasionally subcontracted electrical, plumbing, and air conditioning work to others, O'Brien predominantly performed general maintenance work alone and without any regular employees. He would, however, hire a casual laborer for a few days when necessary. Over the past five years, O'Brien had hired casual laborers "a couple of times" a year. His bookkeeper confirmed that O'Brien never had a regular employee and that he had used day laborers only a couple of times a year for two to three days at a time. Regarding his employment of Donahue, O'Brien testified that he had no plan to use Donahue after the ramadas were finished and could not recall discussing future employment with him.[1] During 1991, O'Brien paid about four percent ($475.00) of his total expenses for subcontractors, which included the $140.00 he had paid to Donahue.

The A.L.J. then issued the award accepting compensability. After declaring that "the issue was whether or not [Donahue] was an employee" and summarizing the testimony, the A.L.J. concluded that Donahue was an employee because "the work [Donahue] was doing on April 6, 1991 was in the usual course of Mr. O'Brien's trade."

O'Brien challenged the award on administrative review. O'Brien asserted that the issue was not whether *Donahue* was an *employee* but rather whether *O'Brien* was an *employer* subject to the Act under section 23–902(A), and argued that he was not an employer because he did not "regularly employ" anyone. On review, the A.L.J. reversed the award and denied compensability, stating:

The Industrial Commission of Arizona has jurisdiction [over an in-state injury] when the claimant works for an employer who regularly employs personnel in Arizona in his usual business. *Di[M]uro v. Industrial Comm['Jn,* 142 Ariz.App. [sic] 57, 688 P.2d 703 (1984). The evidence in this case shows that Mr. O'Brien did not regularly employ anyone in his usual business and

---

1. According to Donahue, O'Brien had indicated that the work would last five to ten days and had held out the prospect of additional work if available.

therefore is not an employer as defined by [A.R.S. section 23–902(A)].

On special action review, Donahue asserts that O'Brien was required to provide coverage because Donahue's work was in O'Brien's usual business. He cites as support A.R.S. section 23–901(5)(b).

■ Section 23–901(5)(b) is not applicable. That provision does not address whether an employer is subject to the Act, and instead defines an "employee." It does so as follows:

(b) Every person in the service of any *employer subject to the provisions of this chapter* ... but not including a person whose employment is both:

(i) Casual.

(ii) Not in the usual course of trade, business or occupation of the employer.

A.R.S. § 23–901(5)(b) (emphasis added). This definition does not determine which employers are required to provide workers' compensation coverage. Rather, it presupposes that the employer is subject to the Act and defines the employees for whom coverage is required. *See Modern Trailer Sales of Ariz. v. Industrial Comm'n,* 17 Ariz.App. 482, 486, 498 P.2d 556, 560 (1972). The statute provides that *if* an employer is required to provide coverage, then even a casual employee is covered if his work is in the employer's usual course of trade, business, or occupation. But it does not follow that under section 23–901(5)(b) casual employment makes one an employer subject to the Act.

The statute governing which employers are subject to the Act is section 23–902(A).[2] This provision defines those subject to the Workers' Compensation Act as: "every person who has in his employ any workmen or operatives *regularly employed* in the same business or establishment under contract of hire...." A.R.S. § 23–902(A) (emphasis added). The Arizona Legislature has defined "regularly employed" as follows:[3] "'[R]egularly employed' includes *all employments,* whether continuous throughout the year, or for only a portion of the year, *in the usual trade, business, profession or occupation of an employer."* *Id.* (emphasis added).

■ The language of the definition does not answer the question presented in this case because, on its face, "employments ... in the usual trade, business, profession or occupation" can have two meanings. We must decide whether the Legislature intended to cover anyone who hires a worker for a task in the employer's usual trade or business, or instead intended to cover only those employers who, in their usual trade or business, hire others. Because both interpretations are possible, the statute is ambiguous and we must go beyond its language to determine the Legislature's intent. *See Arizona Newspapers Assoc. v. Superior Court,* 143 Ariz. 560, 562, 694 P.2d 1174, 1176 (1985). We may consider the statute's subject matter, historical background, effects and consequences, and purpose. *Id.*

## I.

■ The Legislature used the term "regularly employed" in section 23–902(A) to refer to whether it is in the employer's regular or customary business to employ workers, not to whether the employee in question is performing a task in the employer's usual trade.

---

2. *Flamingo Motor Inn v. Industrial Comm'n,* 133 Ariz. 200, 650 P.2d 502 (App.1982), illustrates the distinction between the statutory provisions. There, the employer regularly employed several workers and thus was subject to the Act under section 23–902(A). The employer also employed the claimant, but only casually. The court held that because the claimant's employment was in the employer's usual course of business, the coverage required under section 23–902(A) extended to the claimant under section 23–901(5)(b). *Id.* at 201–02, 650 P.2d at 503–04. *See also Modern Trailer Sales,* 17 Ariz.App. at 486, 498 P.2d at 560 (casual employment in the usual course of employer's trade or business brought the worker within the definition of "employee" in former section 23–901(4)(b)—now section 23–901(5)(b). But "[t]his rationale assumes of course, that the person being considered is in the employ of an employer who is subject to the [Act]." 17 Ariz.App. at 486, 498 P.2d at 560.

3. "[T]he legislature has not defined the term 'regularly employed' as it is defined in dictionaries or in the acts of some other states. The legislature has provided the yardstick and the definition by which to measure employment under the provisions of this statute. The legislative definition is controlling." *Marshall v. Industrial Comm'n,* 62 Ariz. 230, 234–35, 156 P.2d 729, 731 (1945).

This conclusion rests on the statute's purpose and prior judicial interpretations.

The purpose of the "regularly employed" requirement is to prevent an employer from oscillating between coverage and exemption from coverage as his labor force changes. *Marshall,* 62 Ariz. at 235, 156 P.2d at 731; *see* 1C ARTHUR LARSON, THE LAW OF WORKMEN'S COMPENSATION § 52.20 at p. 9–194 (1993). The issue in *Marshall* was whether the employer regularly employed the requisite three or more employees [4] when, although the employer often had more than three employees, it had only one worker at the time of the accident. The intent of the "regularly employed" requirement, the court held, was to avoid the unpredictability of alternating between coverage and exemption as the employer's labor force periodically fluctuates above and below the minimum required to be subject to the Act:

> A great many persons who continuously employ three or more, occasionally employ less. If employers by the adventitious fact that temporarily they employ less than three are thereby taken without the act, an inconsistent and fluctuating test of the application of the law is established. The employer is likely to be caught unawares, and the right of the employee to compensation will be governed not by any customary or regular practice of his employer, but by the chance methods of the occasion ... That the legislature did not intend such a result is patent in view of the definition it gave to the term "regularly employed."

*Marshall,* 62 Ariz. at 235, 156 P.2d at 731.

To further the purpose of the regularly employed requirement, *Marshall* looked to the "established mode or plan in the operation" of the business to determine whether "in the ordinary conduct of an employer's business he customarily or regularly employs the number required to make the act applica-

ble to him...." 62 Ariz. at 235, 237, 156 P.2d at 731, 732; *see* LARSON, *supra* § 52.20 at p. 9–196 nn. 46–49 (citing *Marshall)* [5]. Thus, *Marshall* reveals that the Legislature intended to extend coverage based on whether the employer regularly employs workers.

This court used the same approach in *Agee v. Industrial Comm'n,* 10 Ariz.App. 1, 455 P.2d 288 (1969). The issue in *Agee* was whether an interstate trucking company was required to carry Arizona workers' compensation coverage. Specifically, the court determined whether the term "regularly employed" in section 23–902(A) referred to "the employment practices of [the employer] in relation to the number of persons [the employer] regularly employs ... or whether [it] refers only to the injured workman and to the regularity with which that workman is physically present in Arizona in the performance of his employee responsibilities." *Id.* at 4, 455 P.2d at 291. The court determined that the focus was the hiring practices of the employer, not whether the individual employee was regularly coming to Arizona:

> The phrase "or for only a portion of the year" does not refer to the individual employee but refers to the manner in which the employer does business. In other words, if the employer has three or more employees on a twelve-month basis he must be insured. If the employer has a seasonal business and operates only three months out of the year and during that three-month period has three or more employees he must be insured.

*Id.* In *Agee,* the fact that the employee was hired to perform a task in the employer's usual business did not subject the employer to the Act. *Agee* confirms that the "regularly employed" requirement refers to the employer's hiring practices, not to the duties of the hired employee.

We applied this interpretation of the "regularly employed" requirement again in *Mod-*

---

**4.** *Marshall* interpreted the predecessor to section 23–902(A), section 56–928, Arizona Code Annotated 1939, which, like section 23–902(A) prior to 1973, required employers to have three employees before being subject to the workmen's compensation laws.

**5.** "If there are regularly-recurring periods when, because of seasonal or business variations, the employer has to hire more than the minimum, and if those periods are of substantial duration, the employer should be deemed covered. It is the 'established mode or plan in the operation of the business' that is decisive." LARSON, *supra* § 52.20 at pp. 9–197 to 9–198.

*ern Trailer Sales,* 17 Ariz.App. at 486, 498 P.2d at 560. The issue was whether the casual employment of the required minimum number of workers satisfied the "regularly employed" requirement in section 23–902(A). We found that the employer was subject to the Act because "there is a scheme or plan or periodic need for extra short-term employees in the usual course of the business of the employer...." *Id.* The fact that the casual laborers were doing work in the employer's usual trade related to whether they were "employees" entitled to coverage, but whether the employer was subject to the Act was based on its "regular" practice of hiring extra help. *Id.* at 485–86, 498 P.2d at 559–60.

One case, however, appears to give section 23–902(A) a different meaning. In *Greenway Baptist Church v. Industrial Comm'n,* 130 Ariz. 482, 636 P.2d 1264 (App.1981), the church hired a construction company to manage the construction of a new sanctuary. The church paid the laborers directly; the construction company simply oversaw the building without acting as a general contractor.

Addressing whether the church was an employer subject to the Act, the court mistakenly looked to section 23–901(5)(b), the definition of "employee," and to the "usual trade or business" language in section 23–902(A)'s definition of "regularly employed." *Greenway* is contrary to our supreme court's decision in *Marshall,* and to *Agee* and *Modern Trailer Sales,* none of which *Greenway* referred to. Moreover, *Greenway* did not involve the precise issue involved here—whether the irregular employment of a single temporary employee brought the employer within the Act; the church had several employees for an extended period.[6]

The approach in *Greenway* is also flawed because it makes a portion of section 23–902(A) redundant. If "in the usual trade, business, profession or occupation" refers to the duties of the employee, then the statute's requirement that the employer have a worker regularly employed "in the same business" is repetitious. As interpreted by *Greenway* and Donahue, section 23–902(A) would read: "Employers subject to the [Act] are ... every person who has in his employ any workmen or operatives in the usual trade, business, profession or occupation of an employer in the same business." The last four words would be superfluous—a construction to be avoided if possible. *See, e.g., Devenir Associates v. City of Phoenix,* 169 Ariz. 500, 503, 821 P.2d 161, 164 (1991).

The *Greenway* court asked the right question: Is a church in business and, if so, is building a sanctuary in that business? But it should have answered this question by applying section 23–902(A)'s "in the same business" clause rather than the "in the usual trade" clause contained in its definition of "regularly employed."

*Marshall, Agee, Modern Trailer Sales,* and *DiMuro* all interpreted the "regularly employed" requirement in section 23–902(A) to refer to the hiring practices of the employer, and not to the individual duties of the employee. Indeed, in each case, the employee worked in the employer's business. The dispositive question was whether the employer regularly hired workers.[7] In sum, the Legislature has required coverage only by those employers that regularly hire workers.

Although in 1973 the Legislature reduced the number of employees required to subject

---

6. A more recent case, *DiMuro v. Industrial Comm'n,* 142 Ariz. 57, 688 P.2d 703 (App.1984), indicates that *Greenway* did not call for abandoning the earlier interpretations of section 23–902(A). Citing *Agee* and speaking to the difference between the "regularly employed" requirements of sections 23–902(A) and 23–904(A), this court said that under section 23–902(A), "[t]he [Industrial] Commission has jurisdiction over the claim of an injured worker for an in-state injury when that claimant works for an employer *who regularly employs personnel in Arizona in his usual business.*" *Id.* at 60, 688 P.2d at 706 (emphasis added). "Section 23–902.A. concerns the employment relationship itself. To obtain the benefit of Arizona's compensation law for in-state injuries, one ... must work for an employer who regularly employs workers here." *Id.* at 61, 688 P.2d at 707. That reading is consistent with the cases prior to *Greenway.*

7. The dispositive question in *DiMuro* was the meaning of "regularly employed" in section 23–904(A). But its discussion of the meaning of "regularly employed" in section 23–902(A) is clearly consistent with *Marshall, Agee,* and *Modern Trailer Sales.*

an employer to the Act, this amendment did not abolish the "regularly employed" requirement. Until 1973, section 23–902(A) required a minimum of three employees to subject an employer to the Act. In 1973, the Legislature reduced the required minimum to one but retained the "regularly employed" requirement and its definition. *See* 1973 Ariz.Sess.Laws Ch. 136, § 2 (effective Jan. 1, 1974).

Nothing suggests that the Legislature intended its amendment to negate the decisions holding that only those employers that regularly employ others are subject to the Act. The amendment simply reduced the minimum number of employees from three to one; the Legislature retained the controlling "regularly employed" language. Retaining the "regularly employed" requirement reveals that the Legislature did not intend to require self-employed workers who work essentially alone to provide coverage for the rare instance in which they hire an occasional worker.

We conclude that section 23–902(A) renders an employer subject to the Act only when he employs at least one employee in the regular course of his business. If the employer ordinarily does not regularly employ any workers—if he hires only occasionally and unpredictably—he is not subject to the Act.

## II.

We must now apply section 23–902(A) to this case. The A.L.J. found that O'Brien was not subject to the Act because he never regularly employed anyone. This is a mixed finding of law and fact. Factually, the A.L.J. apparently accepted O'Brien's testimony that he hired workers only a couple of times a year for a few days each time. We must accept this finding if reasonable evidence supports it, *see Associated Grocers v. Industrial Comm'n*, 133 Ariz. 421, 423–24, 652 P.2d 160, 162–63 (App.1982), and O'Brien's testimony does. The A.L.J. concluded that O'Brien's hiring practices did not constitute having employees "regularly em-

* NOTE: The Honorable Michael J. O'Melia, Maricopa County Superior Court Judge, was authorized to participate in the disposition of this

ployed." We agree. Such infrequent and unpredictable employment does not equate with having workers regularly employed. *See* LARSON, *supra*, § 52.20 at p. 9–197 to 9–198 nn. 51–54. *Compare Lingo v. Crews*, 253 Ala. 227, 43 So.2d 815 (1950) (employing requisite number of employees for eight out of 104 days was not regular employment) *and Mathers v. Sellers*, 113 So.2d 443 (Fla.App. 1959) (employing requisite number of employees once in three weeks and for only a few hours was not regular employment) *with Mobile Liners v. McConnell*, 220 Ala. 562, 126 So. 626 (1930) (hiring at regularly-recurring periods of substantial duration due to seasonal business variations was regular employment) *and Modern Trailer Sales*, 17 Ariz.App. at 484, 486, 498 P.2d at 500, 502 (employing the requisite number of employees when needed, which amounted to about 25 percent of the time, was pursuant to a scheme of employment and therefore regular).

O'Brien did not "regularly employ" any workers. Therefore, he was not an employer subject to the Workers' Compensation Act and was not required to provide coverage for Donahue. Accordingly, this is a noncompensable claim for which neither O'Brien nor the special fund has any obligation. *See* A.R.S. § 23–907(B).

We affirm the decision upon review denying compensability.

McGREGOR and MICHAEL J. O'MELIA,* JJ., concur.

matter by the Chief Justice of the Arizona Supreme Court pursuant to Ariz.Const. art. VI, § 3.