NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL AND
MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

MICHAEL BLACKMAN, *Petitioner*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent*,

RON CHAPPELL PAINTING, LLC, *Respondent Employer*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION,
*Respondent Party in Interest*.

No. 1 CA-IC 14-0011
FILED 3-3-2015

Special Action - Industrial Commission
ICA Claim No. 20131-160427
Carrier Claim No. None

Anthony F. Halas, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Taylor & Associates, PLLC, Phoenix
By Weston S. Montrose
*Counsel for Petitioner Employee*

The Industrial Commission of Arizona, Phoenix
By Andrew F. Wade
*Counsel for Respondent*

Special Fund Division/No Insurance Section, Phoenix
By Valli Goss
*Counsel for Respondent Party in Interest*

---

**MEMORANDUM DECISION**

Presiding Judge Jon W. Thompson delivered the decision of the Court, in which Judge Donn Kessler and Judge Kent E. Cattani joined.

---

**T H O M P S O N**, Presiding Judge:

**¶1**        This is a special action review of an Industrial Commission of Arizona (ICA) award and decision upon review for a noncompensable claim. The petitioner employee (claimant) presents one issue on appeal: whether the respondent employer, Ron Chappell Painting, LLC (Chappell), was an employer subject to the Arizona Workers' Compensation Act. Because we find that Chappell did not regularly employ any workers at the time of the claimant's injury, we affirm the award.

**JURISDICTION AND STANDARD OF REVIEW**

**¶2**        This court has jurisdiction pursuant to Arizona Revised Statutes (A.R.S.) sections 12-120.21(A)(2) (2003), 23-951(A) (2012), and Arizona Rules of Procedure for Special Actions 10 (2009).[1]  In reviewing findings and awards of the ICA, we defer to the ALJ's factual findings, but review questions of law de novo. *Young v. Indus. Comm'n*, 204 Ariz. 267, 270, ¶ 14, 63 P.3d 298, 301 (App. 2003). We consider the evidence in a light most favorable to upholding the ALJ's award. *Lovitch v. Indus. Comm'n*, 202 Ariz. 102, 105, ¶ 16, 41 P.3d 640, 643 (App. 2002).

---

[1] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated.

**FACTUAL AND PROCEDURAL HISTORY**

¶3　　　　On December 28, 2012, the claimant was painting the interior of a residence in Arizona City. He was standing on an extension ladder "trimming out a ceiling," when the ladder slipped and he jumped off, injuring his left foot. The claimant sought medical treatment the same day. He filed a workers' compensation claim, which was denied for benefits by the respondent party in interest, Special Fund Division/No Insurance Section (No Insurance).

¶4　　　　The claimant timely protested the denial of benefits, and an ICA hearing was held. Following the hearing, the ALJ found the claim to be noncompensable, and the claimant timely requested administrative review. The ALJ summarily affirmed his ruling, and the claimant brought this appeal.

**DISCUSSION**

¶5　　　　The evidence in this case established that the claimant had his own painting business, although he was working for the respondent employer, Ron Chappell Painting, LLC (Chappell), at the time he was injured. The claimant had responded to a newspaper advertisement placed by Chappell for "experienced painters." He painted two residences for Chappell: the first in Casa Grande and the second in Arizona City.

¶6　　　　The claimant stated that Chappell gave him directions to each residence, told him when to arrive, and provided the paint. As was customary, the claimant provided his own hand tools, brushes, and roller frames. He testified that he had no written agreement with Chappell, and there was no discussion of taxes, insurance, or other benefits. The claimant believed that he had an employer/employee relationship with Chappell because he was being paid by the hour instead of in a lump sum.

¶7　　　　Timothy and Cindy Fuller met the claimant when they worked with him at the Arizona City residence. They also had responded to Chappell's advertisement for experienced painters with their own tools. They were "trying out" for Chappell at the Arizona City residence to see if he liked their painting. Although Chappell paid them by the hour on that initial job, he paid them in a lump sum on subsequent jobs.

¶8　　　　The Fullers received a combined check made out to Cindy. No taxes were taken out of their checks, and they had no written agreement

with Chappell. They drove their own van to the job sites and provided their own tools and supplies. Chappell provided only the paint. The Fullers understood that they were not employees of Chappell, but contractors. They worked for Chappell on an as-needed basis from December 2012 to August 2013. During various jobs for Chappell, they met two other painters working for him in addition to the claimant.

¶9        Ron Chappell testified that he formed his business in 2010. He stated that he performed approximately one hundred painting jobs between 2010 and 2012. Chappell testified that he was self-employed, that he bid on residential interior painting jobs, and that he performed all of his own jobs unless he was offered too many jobs all at once. When that occurred, he would contact other contractors to help him on an as-needed basis and he would pay them a fixed fee for their work. He testified that he found some of these contractors through placing newspaper advertisements. He considered the initial job performed by these contractors to be for the evaluation of their skills. He provided no training or close supervision because he only used contractors who were experienced painters.

¶10        Chappell testified that he had no employees in 2012, because he did not want to deal with insurance, benefits, or vacation. He did not have a contractor's license or carry workers' compensation insurance, and he did not use a written contract with his subcontractors. The only information he had for any of the subcontractors was what was necessary to complete United States Citizenship and Immigration Services Form I-9.

¶11        Chappell testified that when he met the claimant, he explained:

> [H]e would be given an opportunity - - He had to have his own tools, his own ladders, his own drop cloths. He was responsible - - I was not providing any insurance, any benefits - - that he would be given tasks or jobs . . . . and . . . it would be for X amount of dollars per task. . . . So the arrangement was designed as a subcontractor where he would be given tasks and get paid for the tasks.

He testified that he did not provide the claimant with a 1099 for his 2012 work because it was such a small dollar amount that he wrote it off.

¶12        In order to be entitled to receive workers' compensation benefits under the Arizona Workers' Compensation Act (Act), a worker

must have been an employee of an employer subject to the act at the time of his injury. *See* A.R.S. §§ 23-901(6) (2014), 23-1021 (Supp. 2013). Employers subject to the Act are defined by statute to include:

> [E]very person who employs any workers or operatives regularly employed in the same business or establishment under contract of hire, including covered employees pursuant to a professional employer agreement, except domestic servants. . . . For the purposes of this subsection, "regularly employed" includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer.

A.R.S. § 23-902(A) (2014).

**¶13** This court interpreted the "regularly employed" language from A.R.S. § 23-902(A) in *Donohue v. Industrial Commission*, 178 Ariz. 173, 871 P.2d 720 (App. 1993):

> The Legislature used the term "regularly employed" in section 23-902(A) to refer to *whether it is in the employer's regular or customary business to employ workers,* not to whether the employee in question is performing a task in the employer's usual trade.

178 Ariz. at 176, 871 P.2d at 723 (emphasis added). We concluded that an employer is subject to the Act when he employs at least one employee in the regular course of his business. *Id.* at 179, 871 P.2d at 726.

**¶14** Therefore, the legal question in this case is whether Chappell regularly employed at least one employee in the regular course of his business. The ALJ concluded that the record contained insufficient evidence to establish that Chappell regularly employed any workers.[2] This finding is supported by both Chappell's and the Fullers' testimony.

---

[2] At oral argument, the claimant argued that he was surprised by the ALJ's section 23-902(A) "regularly employed" analysis, and that the issue at the hearing should have been whether he was an employee vs. an independent contractor, an issue that the ALJ did not reach. Neither claimant's request for review nor his opening brief raised the issue of surprise; it is therefore

**¶15** Chappell explained that he was a self-employed painting contractor who did all of his own work, unless he was offered too many jobs at the same time. When that situation occurred, he sought assistance from other experienced painting contractors who provided their own equipment and performed the job for a set price. Timothy Fuller testified that he and Cindy continued to work for Chappell on an as-needed, occasional basis after the Arizona City job and never considered themselves to be his employees.

**¶16** We believe that the ALJ could conclude from this evidence that Chappell's hiring of extra labor in the form of experienced painting contractors was "only occasional and unpredictable." *See Putz v. Indus. Comm'n*, 203 Ariz. 146, 150, ¶ 20, 51 P.3d 979, 983 (App. 2002). For that reason, we agree that Chappell was not an employer subject to the Act.

**¶17** The claimant argues that the ALJ should have applied *Modern Trailer Sales of Arizona, Inc. v. Industrial Commission*, 17 Ariz. App. 482, 498 P.2d 556 (1972) to these facts, but we find it distinguishable. In *Modern Trailer*, the employer was a corporation engaged in the business of buying and selling house trailers from an established business location where the trailers were displayed. 17 Ariz. App. at 484, 498 P.2d at 558. The corporation had two full-time, salaried employees. *Id.* In addition, the owner estimated that twenty-five percent of the time he employed additional part-time workers to "help . . . when we got new mobile homes in," to clean the trailers, and to perform yard maintenance. *Id.* This court held that the employer's business plan involved the regular hiring of additional employees, and therefore, it was subject to the Act. *Id.* at 486, 498 P.2d at 560. Because Chappell did not regularly employ others to carry out his business plan, we find *Modern Trailer* inapplicable.

---

waived. *See Special Events Serv., Inc. v. Indus. Comm'n*, 228 Ariz. 332, 334 n. 1, ¶ 7, 266 P.3d 358, 360 n.1 (App. 2011).

¶18        For the foregoing reasons, we affirm the award.



Ruth A. Willingham · Clerk of the Court
FILED: ama