NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

———————————————

RAMIREZ BROS LANDSCAPING DBA RAMIREZ BROS
LANDSCAPING, FERNANDO RAMIREZ, *Petitioner Employer*,

*v.*

THE INDUSTRIAL COMMISSION OF ARIZONA, *Respondent,*

MARIO ORTEGA, LUIS I DIAZ, *Respondent Employees*,

SPECIAL FUND DIVISION/NO INSURANCE SECTION, *Respondent Real
Party in Interest*.

No. 1 CA-IC 21-0011
FILED 11-16-2021

———————————————

Special Action - Industrial Commission
ICA Claim No. 20190-0590269
Claim No. 20200-910025
Carrier Claim No. NONE

The Honorable Marceline A. Lavelle, Administrative Law Judge

**AWARD AFFIRMED**

COUNSEL

Zazueta Law, PLLC, Scottsdale
By Fabian Zazueta (argued), Garrett Respondek
*Counsel for Petitioner Employer*

Industrial Commission of Arizona, Phoenix
By Gaetano J. Testini
*Counsel for Respondent*

Nunez Law Firm, PLLC, Phoenix
By Jason H. Forcier
*Counsel for Respondent Employees*

Industrial Commission of Arizona, Phoenix
By Scott J. Cooley
*Counsel for Respondent Real Party in Interest*

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the Court's decision, in which Presiding Judge Peter B. Swann and Judge David D. Weinzweig joined.

**M c M U R D I E**, Judge:

**¶1**        Fernando Ramirez ("Ramirez"), doing business as Ramirez Bros. Landscaping ("Ramirez Bros."), brings this special action review challenging an Industrial Commission of Arizona ("ICA") Award that found Ramirez Bros. subject to Arizona workers' compensation liability. Because the evidence shows that Ramirez Bros. regularly employed workers in conducting its business, we affirm the award.

## FACTS AND PROCEDURAL BACKGROUND

**¶2**        We view the facts in a light most favorable to sustaining the Award. *Salt River Project v. Indus. Comm'n*, 128 Ariz. 541, 544–45 (1981). Ramirez Bros. is a sole proprietorship of Fernando Ramirez that provides landscaping maintenance and other landscaping-related services to clients. Ramirez sometimes hired workers to help Ramirez Bros.

**¶3**          In February 2019, Mario Ortega and Luis Diaz traveled in a pickup truck to work for Ramirez when they were involved in an auto accident. They went to the emergency room afterward, but the men suffered no serious injuries. Later, they received treatment from a chiropractor. They both filed workers' compensation claims. Ramirez denied liability under workers' compensation law, arguing that he did not regularly hire employees and was, therefore, not an employer subject to workers' compensation liability.

**¶4**          The ICA held a hearing to determine whether Ramirez was an employer as prescribed in A.R.S. § 23-902(A), which provides that

> [e]mployers subject to this chapter are . . . every person who employs any workers or operatives regularly employed in the same business or establishment under contract of hire . . . . For the purposes of this subsection, "regularly employed" includes all employments, whether continuous throughout the year, or for only a portion of the year, in the usual trade, business, profession or occupation of an employer.

An employer is not subject to the Workers' Compensation Act if it "hires only occasionally and unpredictably." *Donahue v. Indus. Comm'n*, 178 Ariz. 173, 179 (App. 1993).

**¶5**          The administrative law judge ("ALJ") needed to decide whether Ramirez hired only occasionally and unpredictably, not regularly. Both Ortega and Diaz testified at the hearing, explaining that Ramirez had consistently hired them from September 2018 until the accident, and they worked full time for Ramirez Bros. They repaired irrigation systems, planted vegetation, and installed pavers. They were paid weekly in cash. And Ramirez supplied a truck to Ortega equipped with tools. Ortega kept the truck at his house so that when Ramirez called in the mornings, Ortega could pick up Diaz and drive to job locations. On the morning of the accident, the truck had been kept at Ortega's house for two weeks. After the accident, Ramirez asked the men to do more work for him, but they declined because they were recovering from their injuries.

**¶6**          Ramirez testified that he started Ramirez Bros. by himself "[a]round two or three years ago" and usually did the work himself. He first asked Ortega and Diaz to work for Ramirez Bros. in September 2018 because they could not find work, and he wanted to help them. Ramirez sent Ortega and Diaz to work on an irrigation system on the morning of the

accident. He usually hired them to install irrigation pipes and sprinklers, which he could do himself if he wanted. He loaned his truck and tools to Ortega to keep at his house and use when Ramirez had work for them. He denied, however, that he regularly hired workers to help him.

**¶7**        The ALJ found Ortega and Diaz more credible than Ramirez. She issued an initial award that did not address whether Ramirez was a covered employer. Instead, the initial award found that Ortega and Diaz were Ramirez's employees, not independent contractors under A.R.S. § 23-902(B) and (C). After Ramirez requested review, directing her attention to whether Ramirez was a covered employer, the ALJ found that Ramirez had offered Ortega and Diaz work regularly, showing that Ramirez Bros. regularly employed the men such that Ramirez Bros. was a covered employer to whom workers' compensation liability applied. This petition for special action review followed.

## DISCUSSION

**¶8**        The question presented, whether Ramirez is an employer subject to workers' compensation liability, is a mixed question of fact and law. *Donahue*, 178 Ariz. at 179. We deferentially review the ALJ's factual findings and apply the law *de novo* to determine whether Ramirez is an employer covered by the workers' compensation law. *See Grammatico v. Indus. Comm'n*, 208 Ariz. 10, 12, ¶ 6 (App. 2011).

**¶9**        The record contains evidence to support the ALJ's finding that Ramirez Bros. regularly employed Ortega and Diaz under A.R.S. § 23-902(A). The testimony shows that Ortega and Diaz worked and remained "on call" for Ramirez Bros. from September 2018 until the accident. But Ramirez Bros. argues it was not a "covered employer" under Arizona law and relies on *Donahue* and *Putz v. Indus. Comm'n*, 203 Ariz. 146 (App. 2002). Its reliance is misplaced.

**¶10**        In *Donahue*, a sole proprietor handyman, who predominately worked alone, at times hired others to do electrical, plumbing, and air conditioning work for his projects. 178 Ariz. at 175. He never had a regular employee. *Id.* Over five years, he also hired "casual laborers" several times a year to help him out. *Id.* He hired Donahue to work for a "'couple' of days" on two ramadas he was building. *Id.* Donahue was injured on the job, and whether the handyman was a covered employer became dispositive. *Id.* at 174–75.

**¶11**        As noted above, we construed A.R.S. § 23-902(A) to be an inquiry of "whether it is in the employer's regular or customary business to

4

employ workers, not . . . whether the employee in question is performing a task in the employer's usual trade." *Id.* at 176. We concluded that the statute

> renders an employer subject to the [Workers' Compensation] Act only when he employs at least one employee in the regular course of his business. If the employer ordinarily does not regularly employ any workers—if he hires only occasionally and unpredictably—he is not subject to the [Workers' Compensation] Act.

*Id.* at 179. Applying that standard to the situation in *Donahue*, we found that the handyman's employment of others was "infrequent and unpredictable," putting him outside the statutory meaning of a covered employer. *Id.*

¶12         Similarly, in *Putz* we held that a sole proprietor residential contractor was not a covered employer after a welder helping Putz put together a prefabricated metal building was injured. 203 Ariz. at 147, ¶¶ 1-2. Putz worked alone and hired help only when he needed another person to help him lift something heavy or for other two-person jobs. *Id.* at 147, ¶ 2. He testified that in the year before the welder was injured, he had hired others to work "a number of hours totaling approximately thirty-two eight-hour workdays." *Id.* at 147, ¶ 5. We rejected an approach that merely compared percentages, noting that while such information may help determine an employer's hiring practices, such comparisons in and of themselves do not serve the purpose of the statute, which is to provide stability in knowing when workers' compensation liability applies. *Id.* at 150, ¶¶ 18–19. Thus, we posed the issue as: "Did Putz customarily or regularly employ at least one worker or was his hiring of extra labor only occasional and unpredictable?" *Id.* at 150, ¶ 20.

¶13         We concluded the latter, noting that Putz's need for short-term labor was not predictable because it depended on the requirements of each job, that most of his projects required only his labor, which he performed himself, and his need for extra help was inconsistent. *Id.* at 150, ¶¶ 22–23.

> [N]o bright-line rule exists notifying self-employed employers when they become subject to the [Workers' Compensation] Act. The analysis . . . calls for occasional case-by-case determinations when the facts regarding the use of extra short-term labor are close. Thus, there is risk involved

when those who are self-employed hire others without purchasing workers' compensation insurance.

*Id.* at 151, ¶ 25.

**¶14** The facts show that Ramirez Bros. had regularly hired Ortega and Diaz for five months before the accident. In addition, Ramirez Bros. provided Ortega with a truck and tools, showing a lasting relationship with ongoing expectations and responsibilities. Nor did Ortega and Diaz work alongside Ramirez; they worked independently. Thus, unlike *Donahue* and *Putz*, this evidence shows a plan of regular employment, placing Ramirez Bros. within the coverage of workers' compensation liability.

**¶15** Finally, Ortega and Diaz request an award of reasonable attorney's fees, stating that Ramirez's petition for special action review of the Award is without substantial justification and was not made in good faith. But Ortega and Diaz do not explain the contention that this special action review has no justifiable basis.

**¶16** Both A.R.S. § 12-349(A) and Arizona Rule of Civil Appellate Procedure 25 give this court authority to impose sanctions for bringing appeals that have no substantial justification or are frivolous. The purpose of such a sanction is to "discourage similar conduct in the future." ARCAP 25. We are guided in this decision by several principles. First, we note that

> [f]rivolous appeals are not new or novel theories raised upon colorable claims, nor positions on appeal that simply fail to prevail. Instead, a frivolous appeal is one brought for an improper purpose or based on issues which are unsupported by any reasonable legal theory.

*Johnson v. Brimlow*, 164 Ariz. 218, 222 (App. 1990) (citations omitted). We are mindful of the chilling effect these sanctions might have on other litigants. *Price v. Price*, 134 Ariz. 112, 114 (App. 1982) (Courts "should not deter the filing of appeals out of fear of reprisal."). A meritless appeal is not necessarily frivolous. *Id.* "Because the line between a frivolous appeal and one which simply has no merit is fine, indeed, the power to punish attorneys or litigants for prosecuting frivolous appeals 'should be used most sparingly[.]'" *Id.*

**¶17** In this context, we recall our ruling in *Lou Grubb Chevrolet v. Indus. Comm'n*, 171 Ariz. 183 (App. 1991), where we agreed with the claimant that the carrier's briefs were "a jeremiad" that was "both ill conceived and calculated to fail." *Id.* at 191. Yet we still did not impose

sanctions because we did not find "the questions that it raised or the novel arguments that it presented [to be] frivolous." *Id.* We take a similar view here. Thus, even though the record provides little support for Ramirez's appeal, without any bright-line rule and the case-by-case nature of the legal issue raised, we exercise our discretion in favor of not imposing sanctions in this case.

## CONCLUSION

**¶18**        Because the facts support a determination that Ramirez Bros. regularly employed Ortega and Diaz, we agree with the ALJ's conclusion that Ramirez is a covered employer and affirm the Award.



AMY M. WOOD • Clerk of the Court
FILED:    AA